IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2002

## STATE OF TENNESSEE v. LONNIE KEITH DISHNER

**Direct Appeal from the Criminal Court for Greene County**
**No. 00-CR-112    James E. Beckner, Judge**

_____

**No. E2001-00870-CCA-R3-CD**
**October 2, 2002**
_____

The appellant was convicted at a jury trial of the offense of felonious reckless endangerment. He was sentenced to a term of one year imprisonment in the Greene County workhouse. In this appeal the appellant claims that the indictment is defective, that the evidence is insufficient to support the verdict, and that the prosecution improperly commented in closing argument that the appellant should have produced a certain tape recording. After a review of the record we are of the opinion that the indictment and evidence are constitutionally sufficient to support the verdict. We are also of the opinion that the appellant has waived any error concerning closing argument by failing to include the transcript of the arguments in the record. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Bob McD. Green, Johnson City, Tennessee, for the appellant, Lonnie Keith Dishner.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Jack Marecic, Assistant District Attorney General; for the appellee, State of Tennessee.

### OPINION

Mary Alice Dotson testified that on July 3, 1999, she was at a cookout at the home of Ken Ward, her grandson. The appellant was also present. During the course of the cookout, the appellant called out Jimmy Bailey, his brother-in-law, to come to Ward's driveway, whereupon the defendant began pulling on his hair and beating him. After the fight ended the appellant went to his trailer, got a gun, and pointed it toward Ward's home. At the time thirty or more people were present in Ward's yard. The appellant started to shoot, but someone hit his arm, and the pistol fired into the air.

However, according to Ms. Dotson, the appellant "did shoot over that way [toward the people in Ward's yard]."

Ken Ward testified that the appellant was his neighbor. Ward and the appellant were married to sisters. On the day in question, he was hosting a cookout at his home when the appellant yelled at Jimmy Bailey, and the two of them began fighting. After Ward thought the fight was over someone yelled "he's got a gun," and Ward saw the appellant standing between some vehicles, pointing a gun at him. Ward was holding his one-year old son and turned to shield him. He turned around to look at the appellant and saw the appellant's brother hit the appellant's arm, causing the gun to go up and discharge. At that point, everyone ran home. Ward said he was very scared when he saw the appellant pointing a pistol at him.

Deputy Mike Fincher testified that on July 3, 1999, he got a call reporting a fight in progress and that shots had been fired. When he arrived at the scene, he saw two large groups of people at two residences. He recovered a handgun from the kitchen of the appellant's residence. He spoke with the appellant, who slurred his speech and appeared extremely intoxicated. The appellant explained the shooting by stating that he suffered from post-traumatic stress disorder. Fincher also interviewed the appellant's wife, and no mention was made by her that she was being attacked when the appellant brought out his pistol.

The appellant's wife, Christy Dishner, testified that there had been ongoing problems in the family for years. On the day in question, her mother came to visit and told her that Jimmy Bailey, her brother, was angry with the appellant, and since they both worked at the same place, the appellant should avoid Bailey. The appellant said he would just go outside and talk to Bailey. As she watched her husband call for him, she saw Bailey charge around his trailer and knock her husband down.

After the fight, the appellant came back inside, suffering from two broken ribs. She went outside where she tried to call the police, but Bailey kept knocking the phone out of her hand. She looked up and saw Ken Ward standing on his porch with a rifle. She started backing away, and all the while her brother, Jimmy Bailey, was in her face, yelling at her and pushing her. She had just turned around to back up and noticed her husband standing in front of the porch with the pistol pointed into the air. The appellant fired one shot into the air and told everyone to get off his property. Ken Ward ran toward Bailey, saying "here Jimmy, here Jimmy, here's a rifle . . . we'll kill that s.o.b." Bailey told Ward to get back in the house and told his sister, Trisha, to call the police.

After this incident, and before charges were brought, there was an incident that involved the police coming out to this area again. During the course of the incident, Ken Ward told the police that he was going to kill the appellant. Three weeks after that statement, and about a year after the original incident, Ward swore out a criminal complaint against the appellant for the July incident.

On cross-examination, Mrs. Dishner admitted writing out a statement on the day of the July incident. There was no reference in her statement concerning Ward holding a rifle or telling Bailey that they should kill the defendant.

Frank Dishner, the appellant's brother, testified that he was present on the day of the incident. He saw the fight and saw Ken Ward on the porch holding a rifle. He heard his brother come out and say "that's enough," and then saw his brother fire a shot into the air. According to his brother, the appellant never pointed a gun at anyone. Frank Dishner testified that he never touched his brother's arm or otherwise tried to deflect his aim.

On cross-examination, Frank Dishner also admitted writing out a statement on the day of the incident. There was no reference in his statement regarding the pistol firing incident or Ken Ward being armed.

Donald Sellers, an acquaintance of the appellant, was at his home on the day in question. He saw the fight and then saw the appellant go out on his porch and fire one shot into the air.

The appellant testified that he was a Gulf War veteran and suffered from post-traumatic stress disorder. He had been involved in an ongoing conflict with Jimmy Bailey since he married Bailey's sister. He began having trouble with Ken Ward when the Ward family, who lived with them for three years, were asked to leave because they did not help with the bills.

On the day in question, the appellant's mother-in-law visited her daughter and told her that her brother, Jimmy, and some others were planning to jump the appellant. He called the police, but was told there was nothing they could do until something happened. He subsequently got into a fight with Bailey and, after retreating inside his home, looked out the window where he saw Bailey slapping his wife (Bailey's sister). He picked up his pistol, went outside, fired one shot into the air and told them to get off his property. He looked over and saw Ken Ward on his porch holding a rifle and heard Ward tell Bailey to shoot him. When the officers later came out, they pulled their weapons on Ward. On cross-examination, the appellant said that his PTSD prevented him from telling Officer Fincher everything that happened.

The appellant confirmed that he was present when Mr. Ward, in the incident following the July incident, told a police officer that they were going to kill him.

Allegedly Defective Indictment

In the instant case the appellant was indicted as follows:

> [T]hat Lonnie Dishner, on or about July 3, 1999 . . . did unlawfully commit the offense of Felonious Reckless Endangerment by recklessly engaging in conduct involving a deadly weapon, to wit: shooting a pistol, which *may* have placed Kenneth Ward in imminent danger of death or serious bodily injury. . .

(Emphasis added.)

-3-

The appellant claims that the use of the word "may" in the indictment lessened the burden of proof on the State to show the appellant's guilt beyond a reasonable doubt and that therefore the indictment is defective.

The reckless endangerment statute, Tennessee Code Annotated section 39-13-103(a) provides that "a person commits an offense who recklessly engages in conduct which places or *may* place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a) (emphasis added). The appellant was indicted in the language of the appropriate statute. The indictment is therefore sufficient in this case.

This issue is without merit.

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Tilson, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Id. at 779.

In the instant case there is no dispute that the appellant discharged a weapon following a fight on July 3, 1999. The only dispute is whether the appellant meant to shoot Kenneth Ward and was thwarted by having his hand hit when he fired, or whether the appellant shot in the air on purpose. In either case there is testimony in the record that he shot in the general direction of Ward. This clearly may have placed Ward in danger, and this potential endangerment is all the State was required to prove. Any inconsistencies or conflicts in the testimony regarding the incident were resolved by the jury and will not be revisited here. This issue is without merit.

## Closing Argument

The appellant's final contention is that the prosecutor in closing argument made a statement that if the appellant were truthful he should have produced the tape recorded threat that he claims Mr. Ward made to him. We are unable however to review this issue because there is no transcript of the closing arguments in the record before us. See State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993).

## CONCLUSION

In light of the foregoing, the judgment of the trial court is AFFIRMED.

_____

JERRY L. SMITH, JUDGE